## LAMONT v. COMMISSIONER OF INTERNAL REVENUE.

## SHAWMUT CO. v. SAME.

### Nos. 11933, 11934.

Circuit Court of Appeals, Eighth Circuit.

June 24, 1941.

D. S. Holmes, of Duluth, Minn. (R. L. Mayall, of Duluth, Minn., on the brief), for petitioners.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER and JOHNSEN, Circuit Judges, and COLLET, District Judge.

COLLET, District Judge.

These actions arise upon petitions for the review of the action of the Commissioner of Internal Revenue, affirmed by the Board of Tax Appeals, including in petitioners' taxable income for the years 1935 and 1936 the amount of depletion deductions[1] taken from taxable income derived

---

[1] A depletion deduction is defined in United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054, as follows:

"The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment. As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed. The fact

in former years from mining property. Although the amounts are different, the facts and the principle upon which the deficiencies were assessed, are identical in both cases. The cases were by stipulation consolidated for submission here and will be treated as one action. The facts which give life to the present controversy follow.

Petitioners own fee interests in two iron mines located in the State of Minnesota. Those mines were leased on a royalty basis. The leases provided for the payment each year of a stipulated minimum royalty regardless of whether the ore was removed. They further provided that ore not removed during the year upon which royalty was paid might be later removed during the life of the lease without further payment. Depletion deductions, defined in the extract from United States v. Ludey, quoted in the margin, were made from income, otherwise taxable, in the years 1929, 1930 and 1931. These deductions were properly made pursuant to the Revenue Act of 1934, U.S.C.A. Int.Rev.Code, Title 26, Section 23(m).[2] See Herring v. Commissioner of Internal Revenue, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389. One of the leases was cancelled in 1935 and the other in 1936. Upon the date of cancellation a large quantity of the ore upon which royalty had been paid had not been removed. The title to this ore reverted to petitioners upon cancellation of the leases. As heretofore noted petitioners had deducted depletion from the amount of taxes otherwise due in the years 1929, 1930 and 1931, upon the theory that the ore, upon which royalty income for those years had been received, had been removed, when in fact the right of removal had alone accrued. In the deficiency assessments the Commissioner has treated as taxable income for the years 1935 and 1936 the total amount of all depletion deductions taken in former years, under authority of Treasury Regulation 86, Art. 23(m)-10-(c) quoted in the margin.[3] A similar regulation was in effect at the time the depletion deductions were taken. It is conceded that if the Regulation quoted is valid and enforceable the amount of the deficiencies assessed is correct. The question for determination therefore is whether the Regulation is valid.

Petitioners assert that by Section 23(m), supra, Congress granted depletion deductions unconditionally, and hence the condition imposed by the Regulation may not be imposed. The Regulation is further assailed upon the ground that it is unreasonable, as well as unauthorized. Arguenda, it is asserted that the Regulation creates income where no income exists, in defiance of the expression of the Supreme Court in Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 186, 190, 83 L.Ed. 167, that: "Treasury regulations can add nothing to income as defined by Congress."

The Regulation is neither unauthorized or unreasonable. Nor does it arbitrarily assume non-existent income. The factual situation in plain language is that petitioners did not pay taxes on a part of the income received by them upon the theory that a portion of that income was not in reality income but represented the return of capital assets which they had sold and had lost the ownership of. As a matter of fact they had sold the capital upon condition that the capital consisting of the ore be removed before the leases expired. If that condition was not met their title was not lost and their capital was not depleted. The condition was not met and pe-

that the reserve is hidden from sight presents difficulties in making an estimate of the amount of the deposits. The actual quantity can rarely be measured. It must be approximated. And because the quantity originally in the reserve is not actually known the percentage of the whole withdrawn in any year, and hence the appropriate depletion charge, is necessarily a rough estimate. But Congress concluded, in the light of experience, that it was better to act upon a rough estimate than to ignore the fact of depletion." 274 U.S. loc. cit. 302, 47 S.Ct. loc. cit. 610, 71 L.Ed. 1054.

2 "(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improve-

ments, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary."

3 "(c) If for any reason any such mineral lease expires or terminates or is abandoned before the mineral which has been paid for in advance has been extracted and removed, the lessor shall adjust his capital account by restoring thereto the depletion deductions made in prior years on account of royalties on minerals paid for but not removed, and a corresponding amount must be returned as income for the year in which the lease expires, terminates, or is abandoned."

998

titioners remain the owners of the property, but retain the income received from the incompleted sale. The proceeds of that sale was income when they received it and is income now. The Regulation has not changed its character to the slightest extent. The Regulation simply provides in effect that when such a conditional sale is made and the tax is not paid on a portion of the proceeds because capital assets may be depleted as a result of the sale, if those assets are not in fact depleted by completion of the sale by actual removal of the ore, then the tax shall later be paid on that portion of the income on which it had not been paid.

Congress provided by the Act quoted that a reasonable allowance should be made for depletion, in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. It did not provide that the allowance should be absolute and irrevocable if the depletion was conditional. By authorizing rules and regulations it delegated the power to promulgate rules which would result in carrying out the express intent of the Act. There could be a no more necessary or a more reasonable regulation prescribed than one providing that if the reason for the allowance—the depletion—should fail by the occurrence of a foreseen contingency, the allowance should be withdrawn.

The comparative value of the ore was wholly immaterial and was properly disregarded. The question is not whether the market value of the ore has increased or decreased. It is:—what forbearance has been indulged on account of a contingency which did not occur? The market value of the ore can have no changing effect upon the amount of the depletion deductions taken, or the amount of income received in the years those deductions were taken. True, the value of the ore on March 1, 1913, was taken as a basis for determining the depletion factor with which the amount of the depletion allowances were calculated, but the factor was merely a yardstick for determining the amount of income which would not be taxed then but upon which taxes should be later paid if depletion did not actually result.

Petitioners' confusion has no doubt resulted in part at least from a misconception of the effect of the minimum royalty provision of the leases. They insist that a portion of the income from those royalties did not only theoretically represent a recouped capital asset, but that it in fact became a capital asset, the character of which could not be later converted into income by the Regulation. The error in such a premise is that the income, as heretofore pointed out, never actually became the substitute for the capital. The depletion allowance was taken upon the condition stated in the Regulation that if it did not become the substitute, the tax should later be paid. Congress had the right to attach the condition. Helvering v. Independent Life Ins. Co., 292 U.S. 371, loc cit. 381, 54 S.Ct. 758, 78 L.Ed. 1311. The Regulation was clearly within the authority delegated by the Act.

The question of whether the Court may consider and determine the wisdom or fairness of the Regulation in requiring the payment of taxes in one year on income actually received during several years is not presented for determination.

Since the Regulation is valid and enforceable, the order of the Board of Tax Appeals is affirmed.